May it please the court. Almost good afternoon. My name is Jeremy McKinney. I'm a member of the North Carolina Bar. I'm very, very honored to be here on this important case. I'd like to acknowledge that the petitioner's family is here, his wife, his children, and extended family. The petitioner himself is not in the United States. After the denial of the motion to reopen in this case, ICE chose to execute the removal order. So it is our hope that upon grant of this petition that the Department of Homeland Security will parole the petitioner back into the United States to finally have what he has sought for the last eight years, and that is his day in court. The notice to appear in this action was issued in 2010 and his applications for relief were pre-terminated by the immigration judge without individual hearing, and we have been fighting for that day in court ever since. Everything stems from two old criminal convictions. One occurred before IRA-IRA in 1996, before the fundamental change in immigration law, and one occurred after, and that has caused the complicators that have to sell, manufacture, or deliver in Tennessee. The second was a felony larceny and incorporated felony breaking and entering from the year 2000 in North Carolina. Well, if the 1995 case is considered an aggravated felony, doesn't that end it? It does not, Your Honor, because 212C, the now repealed INA 212C provides a waiver that would be effective to waive the immigration consequence of that 1995 conviction. I thought the consequence, well, you are arguing that the waiver gives you some benefits because that conviction was before 1996, but at that point in time, you needed two crimes to get the waiver, right? No, Your Honor. In this case, there are three charges of removability. One is for a controlled substance violation that is waivable by 212C standing alone. And you are not disputing that? We are not disputing that, right? Under no circumstances does the petitioner simply get to not have to face his day in court. What we are asking for is the opportunity for him to demonstrate rehabilitation and that he is deserving of a favorable exercise of discretion. That is what 212C is. It provides an effective waiver of controlled substance inadmissibility. Also, the aggravated felony deportability, it is an effective waiver for that. The third charge is what is in dispute. It is briefed as the second issue in our brief and in our reply. And that is the one that I would like to start with because that one has support not only in the dissent in this case. In this case, the Board of Immigration Appeals ruled 2-1. The dissent came down in favor of the petitioner on the second issue. And that also was based on an unpublished board case written by Board Member Roger Pauly in the past called Matter of Melo. Now, what it says is that if the charge is multiple crimes involving moral turpitude, then DHS has to establish, by clear and convincing evidence, deportability based upon two pillars. If a waiver is available to waive the immigration consequences of one of the pillars, then you cannot, then that effectively waives that ground of deportability. The Supreme Court has analyzed that. And the problem with that is that the first turpitude crime could not be waivable. The right to waive under 212C did not exist at that point. He didn't have a second violation. It was not the second violation. And the second violation didn't come until after the act. And you needed them both. And so it seems to me you sort of got it backwards on the logic. You're saying that if any one of them, but St. Serves, basically you had to have the right, you had to be exposed to removability and a waiver right attaching. And he was not And so the waiver right didn't attach until 2000. Now, that's the way I understand the Supreme Court's analysis on this type of thing. On that, two points, Your Honor. Point number one is the offense carried such great weight and exposed him to such criminal liability that he he'd have to commit another crime. That is not my, I understand what you're saying, Your Honor, but I believe that that ground would have sustained. He can presume that he's going to commit another crime before 1996. Right. And he, in fact, didn't commit another crime before 1996. The only way he gets the right of the vesting of the waivability is if he became deportable before 1996. And that one crime of moral turpitude was not, you needed two. And so the waivability was never implicated. That didn't come into play until 2000. Yeah, when he had the felony break in there. Your Honor, again, I would add the additional point that the notice to appear in this case and proceedings were not initiated until 2010. The Supreme Court has made clear that you can use a 212C waiver on proceedings long after its repeal. Provided that you could have used it. In other words, if he had two crimes of moral turpitude before 1996 and he just didn't seek waivability, St. Cyr would say he can do it. But he didn't. And waivability never became applicable before it was repealed. But there were, again, different, there were three different grounds. Aggravated felony. Well, I know, but I'm sticking with the one point you're making, two crimes of moral turpitude, one before and one after the repeal. And it seems to me that analysis has a hard time. Now, the others, you can make all the arguments, the aggravated felony and all the others. Well, before moving on to that, Your Honor, one final point to make on that is that 212C is a waiver of inadmissibility under section 212 of the INA. Now, the Supreme Court has said that that can be used as recently as the Judulong decision, that that can be used to waive section 237A2 grounds as well. Grounds of removability. Now, the law has also shifted in time and gone back and forth whether there needs to be an analogous ground of inadmissibility with the ground of removability. The point is the Supreme Court has made clear now in Judulong that you can use the 212 to waive any of the 237A2 grounds. And I would ask the court to consider that because I think the key portion of our second issue in this petition for review is that that is dispositive in providing the petitioner with... I understand, but that argument you're just pointing out, it can use it. But the waivability in this case could not have been used and did not arise. The right to apply for waivability did not arise until 2000. And at that point, it had been repealed. The second crime occurred in the year 2000, Your Honor. Fundamentally, again, 212C waives controlled substance inadmissibility, waives the aggravated felony inadmissibility. So then we Now, the 2000 crime standing alone does not render the petitioner removable because he was sentenced to less than one year in prison and it occurred more than five years after his admission into the United States. And even though it was two crimes, they were without dispute a single scheme of criminal misconduct. And so he cannot be removed on the one CIMT standing alone. But they were felonies. They were felonies. Even though he was only sentenced to one year. That is correct, Your Honor. Now, so the government charged that the possession, the Tennessee drug offense, was also a crime involving moral turpitude. That is a question that because drug inadmissibility and deportability so often disposes of a case without getting to the moral turpitude question, it's something that has really evaded review. But due to the unique circumstances of this case, that's what we have here. And so we're asking the court to consider the question whether Tennessee's 1995 statute possession with intent to sell, manufacture, or deliver a controlled substance, in this case marijuana, is a crime involving moral turpitude. Now, we all agree at this point, including the Attorney General, that the crime involving moral turpitude consists of two things. Number one, a culpable mental state. And then number two, a reprehensible act. Now, the Board of Immigration Appeals has previously said in a precedent decision that drug trafficking is a crime involving moral turpitude. That was a matter of Corn over 20 years ago. In that specific case, that was a cocaine case. What we would contend, two things. Number one, the possessory intent, the possessory offense was not addressed. In Corn, that was... No, but it's not simple possession. This was not a possessory offense. That is correct. Corn was charged, the respondent, Corn, was charged with possession within this same crime. Possession with intent to sell or deliver cocaine. That's drug trafficking. That, the specific question as to whether, absolutely, Your Honor. That is considered a controlled substance offense. Whether it is a crime involving moral turpitude was specifically reserved by the Board of Immigration Appeals in that footnote in Corn that we've provided at brief. What we would contend to the Court is that the Board painted with too broad of a brush over 20 years ago, and that as categorical analysis has made clear since that time, is that we're looking at the specific offense. I understand that you're arguing that drug trafficking, a felony drug trafficking, is not a crime involving moral turpitude. Not at all. Not at all. Then what I understand you to be doing is to have a second guess Congress and say some drugs are worse than others, but that's not our policy decision. They have controlled substances, and they list them, and for us to assess, well, oxycodone, doctors give that for pain relief. That's a pretty good drug. It helps pain, and it's prescribed, and it's not immoral to use that. But if you traffic illicitly in oxycodone, you would agree that's a crime of moral turpitude, wouldn't you? I would argue that that's not what is before the Court today. I'm not asking you. I'm asking you a hypothetical. Does drug trafficking in oxycodone involve moral turpitude? I would think so. Do you take position that marijuana is different? Yes. Is that what you're up here? That is absolutely right. Is marijuana different? That marijuana is... Trafficking in marijuana is not a crime of moral turpitude. Is that because of the changing mores of society? It is not. What's going on here? It's not, that the petitioner was convicted of possession with intent to sell, manufacture, or deliver. In Tennessee, the state jury does not have to agree whether they were selling, delivery, or manufacturing. That's means and not elements of the offense. So we're looking categorically in this case of someone that was delivering. It may have been for remuneration or no remuneration. The state's not required to prove that. And the specific drug was marijuana. What we're arguing is that marijuana is different. It has a direct parallel to almost 50 years worth of jurisprudence in the realm of alcohol. Both during Prohibition and after Prohibition... Would we be the first court in the country that adopted this position? To my knowledge, you would be. But I will also say... It would just create a split in the circuits. We were asking lawyers and others a while ago. It would not create a split in the circuits? I do not believe that it would create... It would. On the specific question of whether possession with intent to sell, manufacture, or deliver marijuana is a crime involving moral turpitude, to my knowledge, there is not a case of the contrary on that either at the board or at the circuit court level. Because again, the drug inadmissibility and deportability usually trumps any other charge. Is there a time issue here? I mean, this conviction is 1995, correct? For conduct that occurred in 1994, which is more than 20 years ago. The status of marijuana may or may not be changing in society. I mean, some states have decriminalized it now. But it's still in the federal system, and I think still in Tennessee, it's illegal. But if you look back 22 years, it was even more illegal. So when do we judge whether a crime is a crime of moral turpitude? Are we using it at the time it was committed, or are we looking at it from the time period of today? I think, Your Honor, you have to look at it holistically, which is why I point the court's attention to almost 50 years worth of alcohol cases, both during the time when alcohol was nationally prohibited... That argument presumes that we now can adjudicate whether the bootlegging and selling alcohol, distributing alcohol in amounts that amounted to a felony, is a moral turpitude. We don't have to address that. It seems to me if drug trafficking, drug trafficking, felony drug trafficking is a crime of moral turpitude, the fact of the particular drug that Congress chose to put in that doesn't make it one way or the other. You would then go in to evaluate PCP, oxycodone, which is a very... It's manufactured legally and distributed legally. You can make an argument that, oh, I'm distributing oxycodone, which is a good medicine. And you say a lot of people need painkillers. But that's got to be one of the most horrendous things going on right now, is drug trafficking and oxycodone and hydrocodone. And I would agree with that, Your Honor. And I think that's why immigration courts need to be a court of evidence and a court of law, where we have to look at the... In other words, my whole point to you is we can't assess what drugs are better or worse for purposes of determining whether the crime... The crime is distributing and trafficking in a controlled substance. That's the crime. And then there's a list of controlled substances. And Tennessee's statute matches the federal statute, which has that as a controlled substance. Correct. So Tennessee used the same term as the federal code, controlled substance? They used... Yes. They used the same language. Correct. Okay. Your Honor, I'm not... So the element of the offense is controlled substance. The marijuana would be a particularization, like you get that on a bill. You wouldn't even have to allege that in indictment. You might get a bill in particular. It's in Tennessee. It is open. And then there are different ranges of penalties based on the type of drug and the quantity. That's the way the federal code is. Correct. Marijuana used to be, I guess, still is. Five years and heroin or something was 20 years. Things like that. My time... It's all... Sorry, Your Honor. I'm sorry. You got that red light on there. I had that red light on. I really... You went through a red light, so you'll come back. Thank you. We'll give you your time on the rebuttal. Thank you, sir. Yes, sir. Okay. Mr. O'Malley. You may please the court. My name is Andrew O'Malley. I represent the Attorney General of the United States. And I'm here to talk about aggravated felony issues. We didn't get to that before. And that question, whether Mr. Guevara's 1995 conviction is an aggravated felony under the INA, is a matter that this court determines de novo. And that's true whether you do it under your jurisdiction to determine jurisdiction or whether you're reviewing the board's denial of the motion to reopen for legal error. And employing the familiar categorical modified categorical approach on de novo review, it shows that this conviction is an aggravated felony. Now, we know from Tennessee state law and from the statute itself that this particular provision, 3917.417, is divisible between subsections A1 through 4. That's the specific offenses. And then A4, which is the possession with intent to manufacture, sell, or deliver. Now, if you look at the statute and you look at other cases in other circuits, the plain language suggests that it's divisible further between A4, which is possession with intent to sell, possession with intent to distribute, possession with intent to manufacture. But Mr. McKinney is right. When you look at state law, if you look beyond the plain language of the statute, Tennessee state law does treat sell and deliver as a single entity in its charging documents. What are you getting into all that for? I don't understand. In other words, the argument is that there is a separate penalty when you do over 10 pounds. That's right. In the cases of health, that's an element. That's correct, Your Honor. All right. So what are you going into all this divisibility of sell, distribute, and so forth? Yes, Your Honor. It's a minor point. It's if we get to that because sell... I don't think you win on that. Okay. Well, if we get to remuneration, if we get to sell, if we get that down to sell, we win on remuneration. But if we don't get to remuneration, I think we win on the divisibility of the penalty provisions because we know from the state has to prove the... It was possession with intent to sell, distribute, or whatever, or actual selling, distributing, or whatever. And this man was charged under either one of those, it doesn't matter, involving 10 pounds. 10 pounds. That's correct, Your Honor. And the statute makes that a Class D felony. That's correct. And we think that it's... And that's distinct from below 10 pounds. That's correct, Your Honor. That's absolutely right. And that gets us out of the Moncrief exception for a small amount of marijuana. That's an aggravated felony. So the board's decision... I don't know why we have to go through... I mean, this whole categorical approach stuff is tough enough. I couldn't agree more, Your Honor. I absolutely agree. And just on that point, to round that out, because it's an aggravated felony, the board's conclusion that reopening to allow them to pursue cancellation of removal is proper. And therefore, the court can dismiss the petition for review of the denial of the motion to reopen and reconsider. With respect to whether that drug conviction is a crime involving moral turpitude, you're absolutely right, Judge. This is something that... This is a substance that Congress has listed in the Controlled Substance Act. And Tennessee has. And Tennessee has. And the board has long held that this conduct is a crime involving moral turpitude. And I don't know... It's a sighting in my brief. The board very recently, in Gonzales-Romo, extended that logic in matter of corn to a possessory with intent to sell or distribute offense. And this has been addressed by other circuits, notably the Ninth Circuit, in unpublished cases. But Mr. McKinney is right. It's not an issue that comes up frequently because it is something that can be covered under the controlled substance violation provisions. But yes, it has been addressed by the board. It is a crime involving moral turpitude. And Congress has made that very clear, that it implicates the intent to corrupt others. And the one who sells a substance that is controlled directly contributes to the physical purchaser. And that there are few acts that are so reprehensible as the participation in illicit drug trafficking. I'd like to note Mr. Rivera's argument in his brief that somehow this is different because of the intent element in this crime. That because the jury can infer intent, that this is somehow distinguishable from other crimes involving moral turpitude. But that's still an element that the jury has to follow. Even if they can infer intent, it's not specifically based on the amount of drug. It's based on the amount of... The statute requires intent to distribute, sell, or whatever. That's right. It doesn't matter how we reach that. And the jury must infer that from other circumstances as well. For example, the paraphernalia or the amount of money, things of that nature. And you're right, Your Honor. It's something that has to be determined. And it's still an element. And with respect to the 212C issue, Your Honor, which is the remaining legal issue that this court has jurisdiction to review under 242A2D. And I'll begin by noting that we're 20 years, more than 20 years, removed from the repeal of 212C. So the further we get away, the chances of this repeating are dwindling quickly. But the board's decision... The principle is the same. I mean, retroactively, if he had a right under 212C before 1996. That's right, Your Honor. That's right. And the board's reasoning doesn't exactly go that direction. They extend the matter of Balderas decision. And if you get into how the board determined it, they're absolutely right. The extension of the matter of Balderas to this circumstance, which is that a 212C waiver goes to the overall ground of excludability, inadmissibility, removability, whatever it is, as opposed to the individual crime, then where one of those predicate offenses is not eligible for a 212C waiver, then the ground of removability is not eligible to be waived under that. And that's consistent with board precedent or unpublished board decisions. The matter of Melo decision that Petitioner cites is an outlier. It's old and it doesn't deal with the situation here. It does deal with the situation here, but it has the same problem as the dissent by the temporary board member in this case, which is that it focuses specifically on the fact of the crime as opposed to the overall ground of removability. And that's not the proper focus of a 212C waiver. There are no other questions, Your Honor. I just ask that you dismiss the petitions. Thank you, Mr. Powell. Thank you again for your time. Judge, Congress and state legislatures make choices. They make choices every day. And that is in essence their job. They choose what is going to be legal and what is going to be illegal. But as this Court has been quick to point out, that does not automatically render a crime as one involving moral turpitude. As this Court said in 2014, by using the phrase involving moral turpitude to define a qualifying crime, Congress meant to refer to more than simply the wrong inherent in violating the statute. We have to look at, again, at the elements of what is involved in violating the Tennessee statute of possession with intent to sell or deliver in 1995. The crime was marijuana. And... I'll ask you in response to Judge King's questions, the statute prohibited a distribution, possession with intent to sell controlled substance like the federal does. And then there is a list of controlled substances. And so... And the question is, is that type of conduct, possession with intent to distribute controlled substances which the Congress has determined or the Tennessee legislature determined are harmful to others and to the community, whether deliberately doing that is a matter of moral turpitude. I mean, there is a distinction between that and deciding whether the red light should mean to stop or go. I mean, when you put in a statute that says we are going to make red lights mean stop and green lights mean go, there is nothing moral about it. It is an controlled substance. And it is a hard time to convince anybody in the public that that crime doesn't involve moral turpitude when it is one of our most difficult problems today. When we paint with that broad of a brush, Your Honor, it does not, Your Honor, because we have factored out marijuana from controlled substances for moral turpitude. Any other drugs you have factored out that are on those lists? On the basis of this record, no, Your Honor. Not this record. He is asking you, is there any other drug on the list of controlled substances that you would treat similarly? None that I am aware of at this time, Your Honor. Is the Tennessee list the same as the DEA list? Not precisely, but substantially so, Your Honor. I mean, the federalist is right. The DEA list, what they schedule, Schedule 1 or something is what marijuana is for, right? That is correct. And that is the one that can't be prescribed. Congress chose to... They could move it from, they could move something from Schedule 1 to Schedule 3. What is it, 3? You can get a prescription for that. That must be where OxyContin is. But anyway, at this point, you don't know of any other that are scheduled as one of the controlled substances that you'd be willing to take off there? That's correct. Or exclude from the moral turpitude definition. We view this, and based on the punishments, it's also consistent with it, that that is the least culpable conduct within the statute, is possession with the requisite intent to... A simple possession of marijuana is a different crime. That's a misdemeanor. That is, of a small amount of marijuana, that is a misdemeanor in Texas. It's a misdemeanor, and that's federal and state, right, generally? Correct. I mean, that's the way they treat it, a simple possession. What we're arguing here is that the DHS charged multiple CIMT. We denied removability. DHS has the burden of establishing that it's a crime involving moral turpitude by clear and convincing evidence. They submitted no evidence, none at all. We submitted evidence showing that the statute, in essence, with regards to marijuana, is malum prohibitum and not malum in se. It does not speak to a kind of morality that defies time and is grounded in a specific circumstance. You're now getting into the drug trafficking and the degrees of drug trafficking. Congress put marijuana on that list, as did Tennessee, because it thought it was harmful to society and harmful to have drug distribution of that, and harmful not in the sense that it's malum prohibitum, but malum in se because it's just bad. And the notion that marijuana may be having a different viewpoint by several states doesn't change any of that. Again, Your Honor, I would point you to, and my time has expired again, I would point you to the alcohol cases that we have briefed for the court because, again, that was chosen, that was outlawed by the Constitution as... Well, that went through the constitutional process. What about right now? I know you got your red light. As many as you like. If you had a conviction, somebody get convicted in Colorado of possession of a controlled substance with intent to distribute, and then they claim the light was marijuana, and so there's no more turpitude involved, what would you think that the BIA would be obliged to change the rules? The federal law is still the same in Colorado as it is in Tennessee. The federal law is still the same, Your Honor. I think that, yes, I would agree that the act is illegal. I am not disputing that for one moment up here, but for it to be malum in se, I think that what's going on in Colorado and Oregon and California, et cetera, is not so much evidence of the changing views on marijuana so much as it goes back fundamentally to whether it violates a moral norm when we're in the precise moment where the substance itself is of questionable illegality. What business has the three-judge court got to decide what the moral norm is? We need to apply the law. Judge King, I heartily agree with you that the term crime involving moral turpitude provides a challenge for courts and has provided a challenge for courts for 100 years to determine what violates this kind of underlying moral norm. As Judge Posner recently pointed out at the Seventh Circuit, that perhaps it's time to revisit whether the phrase itself is constitutionally ambiguous. That's not my point. My point is that the challenge that is facing this panel is the challenge that is posed by the case law. It demands our immigration judges and Board of Immigration Appeals and this court to make this determination. Drug trafficking and any kind of drug, marijuana, any kind, that drug trafficking is not a crime of moral turpitude. I do not, Your Honor, but I also don't have the converse to that as well. I thought the board takes the position that drug trafficking is involved. They, yes, that is a matter of quorum. They did take that position in a precedent decision, but they specifically reserved the underlying, the question that's before the court here. Okay. We'll come down and brief counsel and proceed on the last case.
judges: Paul V. Niemeyer, Robert B. King, Leonie M. Brinkema